Our first case is 19-2182 United States v. Cotto, and Ms. Esser, you may begin when you're ready. Thank you. Good morning, may it please the court, counsel. My name is Meredith Esser, and I'm arguing this case on behalf of Omil Cotto. The warrant in this case was not supported by sufficient probable cause to allow officers to search the Apodaca Street house. In order for probable cause to exist, this court's cases require a substantial nexus between the suspected criminal activity and the place to be searched. In other words, the affidavit must describe why officers believe that the articles sought are at a particular place. The warrant here did not do that. Recall the facts included in the warrant affidavit. This is an abbreviation, but officers were notified that shots had been fired following a road rage incident. The suspect in the shooting, Mr. Cotto, fled the scene in a red Camaro. He was arrested in front of the Apodaca Street house while arriving as a passenger in a white Nissan, and the red Camaro was also parked there. From the face of the warrant, the address listed, the Apodaca House, could have been any house, unconnected to Mr. Cotto. There's nothing in the warrant suggesting that the house itself is linked to the criminal activity alleged, any criminal activity, or that any contraband would be found inside the house. For example, the warrant does not suggest that Mr. Cotto ever went into the Apodaca House, that he lived there, that his wife lived there, that any of his family members lived there, that law enforcement believed he was connected to the house in any way, or that he attempted to conceal anything in the house, let alone that evidence specifically related to the road rage incident would be found at the home. The warrant failed to establish whose residence the Apodaca Street house was. Excuse me, do you think there would be probable cause, or there was probable cause, if the officers had included the other facts that they knew in this case? I understand your criticism of the warrant, but don't you think there was sufficient probable cause based on the totality of what they knew, even though it didn't make it into the warrant? I mean, there are a lot of other facts that they atmospherically claim to have known. I think it's hard for me to answer that question because I don't know what universe of facts Your Honor is necessarily talking about. I mean, there were certain facts. The wife's linkage to the house and the fact that, I mean, the house was being staked out by officers kind of unrelatedly, which was kind of curious. You don't have to make a concession if you don't want to, but if we're looking at the good faith of the officers, can we look at the other information that they had that linked Mr. Cotto to the Apodaca house? No, and this court's precedent in Knox is very clear on that point. It's a 2018 case, so a fairly recent case that says the good faith analysis is limited to the four corners of the affidavit. And that's why this case is so concerning. The four corners of the affidavit do not link this house to criminal activity. So it doesn't really matter what the officers knew. The rest of the universe of facts, I do agree that there were facts relevant to the probable cause determination that were not included in the warrant. But I think that that actually cuts against the government in this case because under the good faith analysis, it's important to encourage officers to include all of the known facts in the warrant. Isn't it important to know whether or not there were facts which failed to get into the affidavit that were negative towards the issuance of a warrant? I mean, if there are things that are being withheld that would be antithetical to the issuance of the warrant, that's an important fact, isn't it? I don't quite understand the question. Do you mean facts that officers deliberately missed? If officers are trying to preclude the magistrate who's going to issue the warrant, if they withhold facts that are pertinent that would be antithetical to the issuance of the warrant, that's important to know, right? Yes, I mean, that would be... And so you can go outside the four corners for purposes like that. Are there any such facts in this case? I'm still not entirely sure that I understand the question. I think what you're saying is that if officers deliberately withheld information that would be relevant to the probable cause determination, is that relevant to good faith? You understand my question. Okay. I mean, I think that that would be evidence of bad faith if they were deliberately withholding information. That's not my question. My question is, is pertinent to know whether or not they deliberately withheld facts. I still don't quite understand how it relates to the good faith. I can't do any better. I'm sorry. Okay. Let me ask what we did know with respect to the, with respect to the house. Don't we know from the affidavit that within four hours, maybe less than that, of the incident, that the defendant was at the house. And when he arrived at that house, a car that had been involved in the incident, the car that had been driven from the incident, was at the house. Isn't that a significant connection to the house? Maybe not enough for probable cause, but enough for good faith? I don't think so. Why don't you, to focus things, is my account correct? Don't we know that within four hours, the person involved was at this house and the car involved was at this house? I, I'm looking at the warrant here and I don't see the exact timeframe, but I do agree with you that the red Camaro was found at the house and that he was apprehended there. I thought, I thought the affidavit says that this was approved. Well, the incident was around 2 40 PM, something like that. And the affidavit was approved by prosecutor by 630. 630. Yes. So that, that would be four hours. Yes. At most, and probably the events must've been, I think it'd be reasonable to say the events must've been at least an hour. He had the information at least an hour before the affidavit was presented to the prosecutor. So let's say three hours. Is that a fair inference? That's sure. Yes. Okay. And isn't that enough connection? I mean, I don't think so. I just go back to this idea that it really could have been any house. And in this court's cases on good faith, more is required. I mean, I'm looking at Gonzalez, for example, and Dutton, where the, the house and the storage unit that was in Dutton to be searched actually belonged to the suspect. But this court said that, you know, when officers don't actually explain, they don't link the reason why suspected contraband would actually be in a particular place that that's not enough, even under a good faith analysis. Correct me if I'm wrong. Didn't we say that the officers said it belonged to the suspect, but gave no reason no factual basis for that. Maybe I maybe I misremember that case. So, in Dutton, it's this court said that the affidavit does not connect the place to be searched the storage unit with with the defendant. And then in Gonzalez, the issue was that the affidavit never specified the residents listed with with Mr. Gonzalez and never specified the vehicle that was searched with with Mr. Gonzalez. And so I think as an analogy here, this house didn't even belong to Mr. Cotto, there was nothing in the affidavit that talked about who the house belongs to and yes I do agree that the cars, the car was parked outside the white Nissan pulled up, but I don't think I mean this. If he had pulled into say a Whole Foods parking lot and left the red Camaro there and then a white Nissan pulls in later with with a suspect. Does that give officers authorization to search the Whole Foods. I mean, I, I think it's just, it's very tenuous I don't think there's even a minimal nexus to the house, other than that's where the person was arrested and where he returned to his car. And I think that the logical inference here, going back to some language from Roland, is that, you know, Mr Cotto drove there, got into another car, went and stashed, maybe the gun or other contraband at another place, and then returned so I do think there would be probable cause to search the cars, but on these facts I don't think that there is a nexus to the house, in particular. Let me ask you about overbread. Oh, wasn't it fairly likely that a cell phone would contain evidence of this event. Um, I think that the affidavit had to specify why officers would have thought that I mean I think the government's came to judges, judges common sense and say, how did this other person happened to arrive with a different car. Shortly after the accident. Wasn't there some communication a phone call or a text message, and wouldn't checking the cell phone to corroborate that. Wouldn't that be useful. To search his seat. Cell phone. I need two points on that, even if that would be a logical inference there's nothing to show that that's actually what happened and there's nothing to show that that's what officers believed happened I mean it's possible that the wife was nearby and saw the incident happened. Maybe they have some other way of communicating. And the, my other. The other point is that the, the house wasn't Mr Kota's house, and presumably the cell phone would have been on his person and authorizing officers to search a person's house that didn't belong to the suspect was basically an authorization to search the cell phones of the residents of the house who were not involved in any way in this incident. And so I think research of the self, there's a difference between the warrant authorizing the seizure of the cell phones and actually searching them, and our cases don't they hold that any search of the cell phones has to be reasonable. So if you start looking at the cell phone, and you immediately see that it's belongs to someone else. You better stop searching that cell phone. Isn't that required by our precedent. I do believe that's correct but I think even the authorization to see cell phones, other than Mr Kota's cell phone was was authorized by this warrant specific especially because there was nothing in the warrant about whose house. How do you know who's cell phone it is without taking it. Exactly. I would like to reserve some rebuttal time if I may. Thank you very much. Let's hear from the government, Mr Iker. Thank you, honor. Good morning and may it please the court. My name is Peter Iker I'm an assistant US attorney in Albuquerque, New Mexico. The court should affirm the district courts denial of quotas motion to suppress because there was a substantial basis for concluding that probable cause existed to search the Apodaca house because there was a fair probability that evidence of quotas crime would be found in that location. The quota does not dispute that there is evidence in the affidavit that establishes Koto committed the crime of shooting at or from a motor vehicle. That's not in dispute. The dispute is simply whether there was a substantial nexus between quotas crimes and the Apodaca house. And in this case there was, there was a substantial nexus because there were two key pieces of evidence established quotas nexus to that location. First, Koto fled the scene of a violent crime in a red Camaro. Koto then parked that Camaro outside the Apodaca house and left the red Camaro behind. How do we know that? How do we know that? We just know the red Camaro was there four hours later, three hours later. The inference that the government believes can be taken from the affidavit when the affidavit says Koto was apprehended after he returned as a passenger in the white Nissan. The inference from that would be that he left the Apodaca house and left the red Camaro behind and then returned at a later time in the white Nissan. Now, the key to those two pieces of evidence that he fled to the Apodaca house in the red Camaro and then was apprehended later in the white Nissan is that the Apodaca house was not simply some random location where Koto decided to leave the car. The fact that he fled from a violent crime, left his getaway car there, and then returned to that location hours later suggests that the Apodaca house was a safe location for him, a place where he believed that he could avoid apprehension by law enforcement. Isn't it equally likely that it's just a random house? It could have been any house in any neighborhood based on the warrant. Based on the facts of this particular case and the inferences that can be taken, the government doesn't believe that that is possible because we know that Koto exhibited a desire to flee from a violent crime and he drove to the Apodaca house. Now, at that point, it's possible that a person would just leave a car at a random house to avoid apprehension. But the fact that he then returned to the house hours later on the same day at a time when he has exhibited a desire to avoid law enforcement apprehension, he would return to the location of the getaway car, exhibits that this is not just an innocent person's home. This is a home that has a connection to Koto. It shows that he wants to return to the red Camaro. That's correct, but we believe that if he's exhibited this desire to avoid law enforcement apprehension, no reasonable person would return to their getaway vehicle hours later. And so, you know, he did desire. But that's exactly what he did. I mean, I mean, you're trying to say the house and the car are, you know, inseparable. It sounds like and that's exactly what he did. He returned to the environs where the car was parked. That's right, Your Honor. And it's not unusual that he would do that. Well, Your Honor, we believe that someone commits a crime and flees from that crime. They have to go somewhere and they're going to choose a place that they believe they are safe and that will avoid law enforcement apprehension. And we believe that Koto's behavior in this case shows that the Apodaca House was such a location. This was the location that he believed that he would be safe and be safe from law enforcement apprehension. And that's why he chose that location. Well, the mystery for me here is it appears that the officers had a lot more information that would create linkage and they didn't they didn't use any of it. I just that baffles me that, you know, this is the I had several dozen of these cases where, you know, we argue about things that were left out of warrants that they knew that might be exculpatory. And here we have officers that have, you know, additional information, presumably, and it doesn't make its way into the warrant. It's just that baffles me here. Yes, Your Honor. And it presents a rare situation because, of course, there's an incentive for officers to include this type of information because it would support probable cause. Although Koto has not conceded that these additional pieces of evidence would support probable cause, the four items of evidence that the government has outlined in its brief would undoubtedly have supported the issuance of a search warrant in this case, even with the most exacting judge. Well, that's the very point. Why? Why are they missing? And the fact that they're missing. Well, let me ask you, you would agree that this affidavit is pretty thin. Wouldn't you agree to that? Absolutely, Your Honor. This is not this is not a. Then why? Why shouldn't we approach it from the standpoint that the magistrate just did not exercise any independent analysis that magistrate is supposed to do? Just magistrate just didn't execute their duties. Because although this is not a perfect warrant, Your Honor, this is not the bare bones affidavit that the court has been concerned with in the past. There is the minimal nexus between the Apodaca House and the crimes committed by Koto, even if the court concluded that there was not the substantial nexus based on the facts that the government has outlined regarding the flights to the Apodaca House and then returning. Those facts certainly establish a minimal nexus between Koto's crimes and the Apodaca House. This case is not like Gonzalez or Dutton that the Koto sites where there was simply no connection at all between the crimes committed and the location to be searched here. Clearly, there was there was discussion in the warrant that shows there was a minimal nexus between Koto's crimes and the Apodaca House. Wait, the minimal nexus standard is for good faith, not for probable cause, right? That's correct, Your Honor. And so the... You have said that we require only a minimal nexus to uphold a search pursuant to a warrant under the good faith doctrine. Is that right? But I thought you were arguing probable cause and that's hard to see here. I'm sorry. No, and I'm sorry, Your Honor, if I inadvertently turned to good faith too soon. I certainly agree that in order for there to be probable cause, a substantial nexus has to be shown between the crimes committed and the location to be searched. But even if the court finds that a substantial nexus was not there, the court would then turn to good faith and ask whether there was a minimal nexus between the crimes committed and the location to be searched. And just based on the facts of this case, this is not one of those unusual cases where exclusion of evidence will further the rule set forth in Leon. And it's not one of the four situations set forth in Leon where the good faith exception will not apply. Also, in this case, Your Honor, the warrant affidavit sets forth that the detective consulted with the prosecutor prior to submitting the affidavit to the judge. And in Otero, this court found that consulting with an attorney is an important factor when considering good faith. And then also on the good faith, Your Honor, it's important to note that the court below in the district court, Judge Parker, who is a senior United States district court judge with over 30 years of experience, also found that probable cause existed to support the issuance of this warrant. And so there's really no way to say that this is the bare bones affidavit that no reasonable detective or officer would rely upon when executing this warrant. But let me ask you about the consultation with the lawyer. I agree in some cases that's pertinent. But if you have a circumstance where there are many, many other facts that could have been put in this affidavit that would have helped at least in supporting probable cause. Doesn't that suggest that the consultation between the lawyer and the officer was was minimal? No questions were asked. No answers were given. Isn't that the suggestion? And then for that reason, is this one of those cases where we should disregard it? Your Honor, certainly, of course, in hindsight, we wish that the attorney would have suggested that additional information be included in the affidavit. But the question is really, was the officer acting in good faith? And so we can't speculate about what the content of the conversation was between the officer. My question is, under these circumstances, shouldn't we just be an exception to the factor of considering consultation with the lawyer as reflected upon good faith or lack of bad faith? This is the type of case where there's no reason to. Your Honor, we don't believe it's dispositive, but we believe that there is some weight that should still be given to it, because the officer in consulting with an attorney clearly shows an interest in completing the warrant properly. Whether the attorney handled his duties sufficiently is a separate question. But really what we're interested in is, did the officer act appropriately? And by consulting with the attorney, that shows that the officer had a faithfulness to complete the warrant process appropriately. Do we know whether the officer actually read the affidavit or showed the affidavit to the attorney as opposed to discussing the facts? Did the attorney just say, yeah, you've given me enough for probable cause, and then the officer didn't include all that in the affidavit? Do we know one way or the other? Your Honor, I don't recall specifically from the testimony in the district court, but I believe that the officer testified that by stating that the warrant had been electronically approved by the ADA, that it had been emailed to the ADA. But I can't recall specifically from the testimony. And how about the selection of the judge who issued the warrant? Is that in the discretion of the officer, or is that set by the court and this particular judge is on duty at that time? Do you know? Again, Your Honor, I'm recalling the testimony. I believe it was just the judge who was on duty that day. I don't believe that the detective made any specific – there's no testimony that the detective specifically chose the judge that he went to to issue the warrant. What do we know about that judge? Judge Parnall, I believe, is currently on the children's court. At least he was in 2018. But I know he's a very – he's been on the district court for many years. Does the record indicate whether or not the officer drafted the affidavit on his own and then just emailed it to the prosecutor? The testimony indicates that Detective Marujo, who was the affidavit in this case, was involved in the investigation on the scene at some point, but was then directed to go back to his office, and he began drafting the affidavit at his office while communicating by phone or radio with other officers on the scene. So the lawyer didn't have a hand in drafting the affidavit. It was just emailed. There's no indication that he drafted the affidavit, Your Honor, no. And then a second search warrant was obtained for the backpack, is that right? Yes, Your Honor. The initial search was based on the shooting that occurred, and so the evidence was related to the shooting and the investigation of that. When officers went into the Apodoga House based on the first search warrant, they found the red and black backpack. Within that backpack, they found two bundles that appeared to be drug-related and was later confirmed to be two pounds of methamphetamine. But at that point, the officers backed out and said, Our warrant does not allow for the seizure of drugs or guns, and so they drafted a new warrant. But as the government points out in its brief, the plain view exception would have allowed the seizure at that time because the officers recognized it as contraband. And so it's another example of the officers being faithful to the warrant process by seeking a second search warrant when they really didn't have to. Was it the same officer that sought the second search warrant? It was, Your Honor. I believe the testimony is that Detective Marujo was still in his office, or actually he may have had to drive back. He may have gone to the scene and then drove back to his office for the purpose of drafting a second search warrant. Your Honor, if I may just briefly then turn to the inevitable discovery, even if the court concludes that good faith didn't exist in this case, an additional reason for the court to affirm in this case is the inevitable discovery doctrine. As we discussed, that really troubles me to apply the inevitable discovery doctrine. That would mean there's absolutely no incentive to include the pertinent information in the affidavit because you have a lousy affidavit. And so there's not probable cause. But you say, oh, it would have been discovered if the judge had asked questions and I would have revised the affidavit and included all my information. That's and that's pretty well accepted as the way to view the inevitable discovery doctrine in this context, isn't it? And Your Honor, I see that my time is almost up. May I answer the court's question? Go ahead and answer the question. And so, Your Honor, first, I would say that there's always we always want detectives to properly complete their affidavits and include all pertinent information. But there is an inherent incentive in every case to not leave helpful facts out. And so finding a novel discovery in this case would not would not create an incentive to not complete warrants appropriately. Simply the fact that helpful information is out there would would always incentivize officers to include that. And the inevitable discovery doctrine would not create any type of perverse incentive in this case. Well, it would it would reward sloppy, sloppy work. And in a sense of if probable cause were not found here in the future, the officers would have more of an incentive to provide everything they knew if they lose a case on these facts. And your I would just ask the court to consider the facts of Sousa, which is the court's one of the court's main inevitable discovery cases. In that case, officers had a box that had been alerted to by a narcotics dog. The box was set aside to get a search warrant. And during while it was set aside, a UPS worker was sort of suggested by an officer to open the package. And the court found an edible discovery in that case because the court said there certainly would have been probable cause and a search warrant would have issued to search this box. And and the fact that the detectives or agents suggested that the UPS worker open the box is not going to create a suppression issue. All right. Your time's expired. Appreciate the argument. We have some rebuttal time for Mr. Thank you. I'd like to briefly just address the issue of the fact that the warrant was reviewed by an attorney. And I'd like to draw the court's attention to the United States versus Gonzalez case where this issue is specifically discussed. The case says that the officer prepared an affidavit, had it reviewed by his supervisory sergeant, presented it to an assistant district attorney and then submitted it to the magistrate. And the court says, we agree. The detective employed a reasonable process in seeking the warrant. However, this fact alone does not establish good faith reliance. While officers are generally entitled to rely on the magistrate's judgment, they are also required to exercise their own professional judgment. And law enforcement officers are presumed to have a reasonable knowledge of the law. So my response to the government's point about the detectives being reasonable in their seeking the warrant and the process that they used. I don't think that that obviates the need for a warrant that has sufficient facts to link the the instrument of the crime to the actual place searched. In terms of inevitable discovery, I agree with Judge Hartz that the inevitable discovery doctrine just doesn't apply in this situation. This court's inevitable discovery cases cover circumstances where an independent party would have uncovered the evidence. This is actually a Supreme Court case in Nix, where the plain view doctrine would have applied, where a later inventory vehicle search would have uncovered the evidence. But in this case, there is no independent line of investigation that would have uncovered the evidence. And in the Souza case, and then also the Christie case, the inevitable discovery doctrine was applied because officers jumped the gun without a warrant. And the factors that were applied under Souza were factors that went to the later determination that a warrant would have issued based on the probable cause that the officers had at the time. But that's not the circumstance that we have here. It's a very different situation, a situation that involves very different incentives. And if this warrant, if the inevitable discovery doctrine is applied in this case, as I said strenuously in my brief, it would be an end run around the holding of Knox, which requires looking only at the four corners of the affidavit. And I see that my time is up. If there are no further questions, I would ask that the decision of the district court be reversed and the evidence be suppressed. And counsel, we appreciate your argument. Counsel are excused and the case shall be submitted.